**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

LAWRENCE WAIMON

                         Plaintiff,

         - v -                                  Civ. No. 6:02-CV-1025
                                                       (NAM/RFT)

JO ANNE B. BARNHART, Commissioner of
Social Security,

                         Defendant,

| APPEARANCES: | OF COUNSEL: |
|---|---|
| O'DELL, O'DELL LAW FIRM<br>Attorney for Plaintiff<br>37 Chester Street<br>Glens Falls, New York 12801 | MICHAEL S. O'DELL, ESQ. |
| HON. GLENN T. SUDDABY<br>United States Attorney for the<br>Northern District of New York<br>Attorney for the Defendant<br>P.O. Box 7198<br>100 S. Clinton Street<br>Syracuse, New York 13261 | WILLIAM H. PEASE, ESQ.<br>Assistant United States Attorney |

**RANDOLPH F. TREECE**
**UNITED STATES MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

      In this action, Plaintiff Lawrence Waimon moves, pursuant to 42 U.S.C. § 405(g), for

review of a decision by the Commissioner of Social Security denying his application for disability

benefits.[1]  Based upon the following discussion, this Court recommends that the Commissioner's

decision denying Social Security benefits be **affirmed**.

---

[1] This case has proceeded in accordance with General Order 18 which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Both parties have filed briefs, though oral argument was not heard. Dkt. Nos. 9 & 11.  The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

# I.  BACKGROUND

## A.  Facts

The facts set forth in Waimon's Brief under the heading "Statement of The Case" are adopted.  Dkt. No. 9, Pl.'s Brief at pp. 3-8; *see also* Dkt. No. 11, Dft.'s Brief at pp. 1-2 (incorporating Plaintiff's summary of the medical and other evidence with the exception of any inferences or conclusions asserted therein).  Generally, Waimon alleges a disability due to a the culmination of various impairments including degenerative disc disease of the cervical spine, osteoarthritis, spinal stenosis, interrupted Palmer arch, concussions and tilting spine resulting in continual pain, muscular fatigue, limited motion of neck and extremities, and anxiety.  Dkt. No. 7, Admin. Transcript [hereinafter "Tr."] at 130 & 154.

## B.  Procedural History

On March 13, 2000, Waimon filed for disability insurance benefits alleging a disability onset date of January 14, 1999.  Tr. at 116-18.  That application was denied initially and on reconsideration.  Tr. at 82-87 & 90-92.  On December 28, 2001, a  hearing was held before Administrative Law Judge (ALJ) Thomas P. Zolezzi (Tr. at 46-81), and on March 5, 2002, the ALJ issued an unfavorable decision against Waimon (Tr. at 38-45).  On June 5, 2002, the Appeals Council concluded that there was no basis under the Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner.  Tr. at 5-6.  Exhausting all his options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

# II.  DISCUSSION

## A.  Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied.  *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g).  Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed.  *Johnson v. Bowen*, 817 F.2d at 986.

## B.  Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national

economy.  *Id*. at § 423(d)(2)(A).

        In determining whether a claimant is disabled, the Commissioner follows a five-step

analysis set forth in the Social Security Administration Regulations.  20 C.F.R. § 404.1520.  At Step

One, the Commissioner "considers whether the claimant is currently engaged in gainful activity."

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  If the claimant is engaged in substantial

gainful activity, he or she is not disabled and the inquiry ends.  If the claimant is not engaged in

substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the

claimant suffers from a severe impairment that significantly limits his or her physical or mental

ability to do basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant suffers from a severe

impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals

an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations.  *Id*. at § 404.1520(d).

The Commissioner makes this assessment without considering vocational factors such as age,

education, and work experience.  *Berry v. Schweiker*, 675 F.2d at 467.  Where the claimant has such

an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform

substantial gainful activity.  *Id*.  If the claimant's impairment(s) does not meet or equal the listed

impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the

residual functional capacity (RFC)[2] to perform his or her past relevant work despite the existence of

severe impairments.  20 C.F.R. § 404.1520(e).  If the claimant cannot perform his or her past work,

then at Step Five, the Commissioner considers whether the claimant can perform any other work

available in the national economy.  *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 404.1520(f).

---

        [2] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related
symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your
residual functional capacity is what you can still do despite your limitations."  20 C.F.R. § 404.1545(a).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id*.; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 404.1520(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Zolezzi's Findings

At the hearing, both Waimon, and his wife, Jeannie, testified. Tr. at 46-81. In addition to such testimony, the ALJ had Waimon's medical records consisting of treatment reports and opinions from various treating and/or examining physicians, including, 1) Robert Evans, M.D.;[3] 2) Robert Sellig, M.D.; 3) Thomas Osika, Ph.D.; 4) Richard B. Weiss, M.D.; 5) Abdul Hameed, M.D.; 6) Todd Rehm, chiropractor; and 7) Robert M. Fine, D.P.M. Tr. at 155-263.

The ALJ stated that Waimon met the special insured status requirements of the Act and is insured for benefits through June 30, 2001. Using the five-step disability evaluation, ALJ Zolezzi found that 1) Waimon had not engaged in any substantial gainful activity since January 14, 1999, the onset disability date; 2) Waimon's cervical pain and anxiety are severe impairments; 3) these

---

[3] There is a discrepancy in the administrative transcript as to whether this practitioner's name is "Richard Evans" or "Robert Evans." *Compare* Tr. at 190-81 *with* Tr. at 206-14. The Court adopts Plaintiff's reference to "Robert Evans" as the correct name. Dkt. No. 9 at p. 5.

severe impairments did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) Waimon has a residual functional capacity to perform medium work but cannot perform his past relevant work due to the stress involved; and 5) in considering other vocational factors, Waimon can perform work available in the national economy.  Tr. at 38-45.  After reviewing the administrative transcript, the Court finds that the ALJ applied the correct legal standards and his findings are supported by substantial evidence of record.

### D.  Waimon's Contentions

In reviewing Plaintiff's Brief, the Court notes that Plaintiff has not alleged that the ALJ applied incorrect legal principles in deciding his claim for disability benefits.  In fact, his Brief is entirely devoid of any citations to either the Regulations or legal precedent.  Instead, Plaintiff appears to take umbrage with certain of the ALJ's factual findings.  In this regard, Plaintiff makes the following contentions: 1) the ALJ's statement that there was a "paucity" of objective findings relative to Plaintiff's medical injuries is contradicted by the record; 2) the ALJ's statement that there was an absence of treatment for cervical pain by orthopedic surgery or neurosurgery is contradicted by the record; 3) the ALJ's statement that there was no evidence that the claimant took prescribed medications is contradicted by the record; 4) the ALJ's statement that there was an absence of physical therapy is contradicted by the record; and 5) the cumulative effect of claimant's impairments, namely degenerative cervical disc disease, torn tendon in elbow, torn tendon in foot, dyslexia, and psychological impairments from acute anxiety, render him disabled.

In reviewing Plaintiff's claims, we are guided by the above standard of review.  To reiterate, "[t]he factual findings of the Secretary, if supported by substantial evidence on the record as a whole, shall be conclusive." *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983) (citations

omitted).

### *1.  Paucity of Objective Findings*

Waimon first asserts that the ALJ erred in stating that there was a paucity of objective

findings.  In support of his claim, Waimon draws attention to his own chronology of his injuries, to

which he testified to at the Hearing.  *See generally* Tr. at 46-81.[4]  Waimon further cites to the

"objective findings relative to claimant's injuries" made by each physician involved in the case

including, Robert Evans, M.D. (Tr. at 180-81), Robert Sellig, M.D. (Tr. at 182-84), Thomas Osika,

Ph.D. (Tr. at 185-88), Todd Rehm, M.D. (Tr. at 171-75), and Robert Fine, D.P.M. (Tr. at 234).

While the Court sympathizes with the possibly unendurable tragedies Plaintiff has faced in his

lifetime, not the least of which the fact that his family has been victims to drunk drivers on three

separate occasions resulting in the loss of both his father and grandmother, we must emphasize that

in terms of his claim for disability, what is meant by "objective findings" is clearly defined in the

Regulations as "medical signs and laboratory findings."  20 C.F.R. §§ 404.1512(b)(1) &

404.1528(b), (c).  Plaintiff's chronological list of his injuries, including his own devastating

---

[4] In his application for review of the Hearing Decision to the Appeals Council, Waimon included a typed "Chronology of Injuries":

| | |
|---|---|
| Nov. 1949: | Struck back of head–[Resulted in l]oss of half of body's blood/Permanent paralysis to left side of face.  Three years of physical therapy–3X week. |
| May 1955: | Bike accident/head–[Resulted in h]airline fracture/installed clamps to close wound[.] |
| March 73': | Struck by drunk Ambulance driver–[Resulted in c]oncussion/Tilted spine Straightening of lurdotic [sic] curvature/loss consciousness/three months physical therapy Exacerbated facial paralysis[ ] Degenerative disc disease[.] |
| March 76': | Dragged by fleeing motorist–[Resulted in h]and stuck in door/dragged 15ft. original tear of tendon of left elbow[.] |
| March 81': | Elbow/Head injury Stolen car incident–[Resulted in s]truck in head & elbow by police baton/Interrupted Palmer arch, temporary lost use of left fingers, concussion to occipital portion of head[.] |

•    Diagnosis of tendon damage in 2001 may have been caused by previous accident in 1973.  Knocked out of shoes when struck by ambulance, foot injury not discovered at time.  Cumulative effect of major concussions CAN cause short-term memory loss, reading impairments, severe headaches/mild convulsions.

Tr. at 23.

experience as a victim to a drunk ambulance driver, would clearly not suffice as an objective

medical finding.  Nor for that matter would any of the doctor's reports cited by Plaintiff constitute

objective medical findings as none of those reports appear to be based upon clinical or laboratory

findings.  The report issued by Dr. Evans, dated April 25, 2000, simply lists Plaintiff's prior history

of anxiety, depression, panic attacks, irritable bowel syndrome, and abdominal pain.  Tr. at 180-81.

Dr. Evans' report does not appear to be based upon clinical or laboratory findings.  The portion of

Dr. Sellig's report, dated May 23, 2000, relied upon by Plaintiff is merely a recounting of Plaintiff's

impairments as reported by Plaintiff.  Such would not constitute objective medical findings.  On

actual examination, Dr. Sellig reported that Plaintiff had full range of motion in his neck, back, and

extremities.  Tr. at 183.  And, Dr. Sellig noted that Plaintiff's strength was excellent in all muscle

groups tested and his reflexes were equal and active bilaterally.  *Id*.  Similarly, with regard to Dr.

Osika's report, dated May 20, 2000, much of what Plaintiff relies upon is merely a historical

recounting from the claimant.  Tr. at 185-88.  Plaintiff was referred to Dr. Osika for a psychiatric

consultive examination.  During that examination, Dr. Osika observed that Plaintiff was alert and

oriented to person, place, and time.  Tr. at 187.  Plaintiff denied delusions or hallucinations as well

as any suicidal or homicidal ideations.  *Id*.  While Plaintiff acknowledged some "anxiety symptoms

related to leaving his home" he also indicated that he is able to make speaking engagements

regarding his efforts to prevent drunk driving.  *Id*.  Plaintiff also denied depressive symptoms.  *Id*.

Dr. Osika found that "no significant signs of depression were noted during the interview. . . . [and

Plaintiff had] some **mild** difficulties with anxiety."  *Id*. (emphasis added).  Next Plaintiff cites to the

report of Dr. Fine, dated March 21, 2002 based upon an examination dated October 16, 2001,

wherein Dr. Fine diagnosed a partial tear of the tibialis posterior tendon, pes piano valgus, partially

compensated forefoot varus, ankle equinus, limb length discrepancy, and calcaneal valgus upon

weight bearing.  Tr. at 234.  However, Plaintiff's insured status expired on June 30, 2001, which

means that Plaintiff must establish a disabling impairment prior to that date.  42 U.S.C. §§

423(a)(1)(A), (c)(1).  Since Dr. Fine fails to indicate whether his findings relate back to a period

prior to June 30, 2001, his report would not support Plaintiff's claim for benefits.  *See Armone v.*

*Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989) (explaining the quantification of a claimant's insured

status); *Hartfiel v. Apfel*, 192 F. Supp. 2d 41, 43 (W.D.N.Y. 2001) (finding claimant failed to

establish disability prior to expiration of insured status); *Vincent v. Shalala*, 830 F. Supp. 126, 128

(N.D.N.Y. 1993) (finding that injuries sustained after expiration of insured status are irrelevant to a

determination of eligibility for disability benefits).  Lastly, Plaintiff cites to the report of Dr. Rehm,

dated April 25, 2000.  Tr. 171-77.  Dr. Rehm diagnosed cervical disc herniation with resultant

spinal stenosis, degenerative disc disease, myofascial pain syndrome, and neck, shoulder, and low

back pain.  Tr. at 171.  Despite these diagnoses, Dr. Rehm found Plaintiff capable of performing

work at the medium exertional level.[5]  Tr. at 173.  Notably, in evaluating the various medical

opinions and determining the weight to be given, the ALJ specifically gave "great weight" to Dr.

Rehm's opinion.  Tr. at 43.  This is certainly in accordance with the Regulations which provide that

the Commissioner shall give controlling weight to a treating source's opinion "on the issue(s) of the

nature and severity of [a claimaint's] impairment(s) [as long as it] is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

---

[5] Dr. Rehm stated Mr. Waimon could never lift overhead, could lift up to fifty (50) pounds, sit for less than six hours per day, and stand and walk with no limitations.  Tr. at 173-74.  According to the Regulations,

> [m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1568(c).

substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).  It appears that claimant

desired the ALJ to only accept those portions of Dr. Rehm's report that he felt furthered his claim of

disability and should simply discount those portions that don't.  Obviously, this is not the proper

task for the ALJ.  In reviewing Dr. Rehm's report, the ALJ noted that he has had a longstanding

treatment relationship with the claimant and since his findings were based upon medically accepted

clinical and laboratory techniques, great weight was afforded to his opinions.  In doing so, the ALJ

did not commit any error.

   We find that the ALJ's finding of fact as to the paucity of objective findings is supported by

the record and is therefore conclusive.  That is not to say that such opinions are not relevant to the

five-step disability evaluation altogether, and in reviewing the ALJ's decision, it is clear that he did

consider the various opinions and discussed both the weight to be given to such opinions and his

reasons supporting therewith.  But with regard to Plaintiff's objection to the ALJ's statement

regarding the lack of objective evidence, the Court accepts the ALJ's statement as conclusive since

it is clearly supported by the record.

### 2.  Claimant's Pain

   Plaintiff criticizes the ALJ's statements regarding the absence of treatment for cervical pain

and the absence of pain medication.  According to Plaintiff, both of these statements are

contradicted by the record.  In support of his first point, Plaintiff merely cites to his testimony at the

Hearing wherein he recounts how he was diagnosed with degenerative disc disease and was told

that his condition would deteriorate with age.  Tr. at 57.  Waimon also testified that he had been

informed that his condition would worsen unless he elected to have a bone graft surgery on his

neck.  *Id*.  In support of his second contention, Waimon cites to the reports of Drs. Evans, Sellig,

and Osika who all recounted the medications Plaintiff himself reported to be taking.  He also cites to the list of medications he provided.

We construe both of Plaintiff's contentions to be an overall criticism of the ALJ's assessment of Plaintiff's credibility regarding subjective complaints of pain.  Under 20 C.F.R. § 404.1529(a), subjective pain will be considered in determining a claim for disability to the extent in which "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  Symptoms such as pain are to be considered by the ALJ at all steps of the disability determination.  20 C.F.R. § 404.1529(a),(d).  A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence, which includes medical signs and laboratory findings.  *Id*. at § 404.2539(c)(4).  Once medically objective evidence is submitted, the ALJ must identify the severity of the pain and whether that pain will limit the claimant's ability to work.  *Id*. at § 404.1529(c).  "It is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where . . . it is supported by objective medical evidence."  *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)).  However, in a case where subjective symptoms are identified, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged."  *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y 1987).  Where the ALJ resolves to reject subjective testimony with regards to pain and other symptoms, he or she "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his [or her] determination is supported by substantial evidence."  *Id*. at 608 (citing, *inter alia*, *Valente v. Sec'y*

*of Health and Human Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1985)).  In evaluating a claimant's

complaints of pain, an ALJ must consider several factors set forth in the Regulations including:

> (i)      [The claimant's] daily activities;
> (ii)     The location, duration, frequency, and intensity of [claimant's] pain or other
>          symptoms;
> (iii)    Precipitating and aggravating factors;
> (iv)     The type, dosage, effectiveness, and side effects of any medication [claimant]
>          take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;
> (v)      Treatment, other than medication, [claimant] receive[s] or ha[s] received for
>          relief of [his or her] pain or other symptoms;
> (vi)     Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other
>          symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes
>          every hour, sleeping on a board, etc.); and
> (vii)    Other factors concerning [claimant's] functional limitations and restrictions due
>          to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

As indicated above, Plaintiff's statements about pain, with nothing more, cannot be the basis

for a finding of disability.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a).  There must also be

medical signs and laboratory findings that reveal a medical condition "which could reasonably be

expected to produce the pain or other symptoms alleged[.]"  20 C.F.R. § 404.1529(a).  While there

appears to be some evidence in the record regarding the medications Plaintiff takes, many of those

accounts are from Plaintiff himself.  None of the reports provided by the doctors indicate whether

that particular doctor prescribed the medication and what the medication was prescribed for.  For

example, in Dr. Evans' report, there is a notation that Plaintiff had been treated with Klonipin,

Motrin, Serzone, and Lodine, though it is not clear whether those medications were specifically

prescribed for pain.  In his report, Dr. Evans notes that Plaintiff had a history of anxiety, depression,

panic attacks, irritable bowel, and abdominal pain, yet, in his application for disability benefits,

Waimon claims he is disabled due to degenerative disc disease, oseteoarthritis, mild spinal stenosis,

interrupted palmer arch, concussions, and tilting spine; none of these conditions are noted by Dr.

Evans, which, as suggested by the Commissioner, indicates that the medication was not prescribed for any of Plaintiff's allegedly disabling impairments.[6]  *Compare* Tr. at 130 *with* Tr. at 180. Similarly, the Plaintiff points to the reports of Drs. Sellig and Osika as further evidence of the pain medication he takes.  However, in both reports, the doctors merely recount Waimon's history and what medication he had been prescribed in the past.  There is no mention of what medication they themselves prescribed.

Based on the above, substantial evidence supports the ALJ's statements that there is an absence of surgical treatment for cervical pain and that Plaintiff was not taking prescribed pain medication for the impairments he alleges support his claim for disability.  The ALJ was entitled to not rely entirely on the Plaintiff's account of pain without the existence of objective medical evidence, which as addressed above, was scarce.  42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability[.]"). While we acknowledge that Plaintiff's impairments cause pain or discomfort, that fact alone would not establish disability as disability requires more than mere inability to work with pain or discomfort.  *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983); *Halloran v. Comm'r of Soc. Sec.*, 2003 WL 1623402, at *5-6 (N.D.N.Y. Mar. 28, 2003) (citing *Dumas*).

### 3.  Lack of Physical Therapy

In his fourth point in support of the relief sought, Plaintiff criticizes the ALJ's statement that there is an absence of physical therapy in the record.  Dkt. No. 9 at p. 14.  In support of his claim of factual error, Plaintiff cites to Dr. Rehm's report where he sets forth his current treatment as well as

---

[6] The Commissioner further points out that Plaintiff, in reporting his various medications to the Social Security Agency, indicated that Dr. Evans prescribed Vioxx for pain, yet, Dr. Evans did not indicate in his report that he prescribed Vioxx.  *Compare* Tr. at 170 *with* Tr. at 180-81.

home remedies he employs including the use of a cervical harness followed by a hot bath and then a hot shower.  We agree with the Commissioner that the ALJ's statement regarding the absence of physical therapy seems to be directed to the fact that there are no records from a physical therapy facility.  Furthermore, Dr. Rehm, who is a chiropractor, recommended conservative treatment.  Tr. at 172.  Thus, the ALJ's statement regarding the absence of physical therapy is supported by the record.

### 4.  Residual Functional Capacity

In his last claim for relief, Plaintiff asserts that the cumulative effect of all his impairments, namely degenerative cervical disc disease, torn tendon in the elbow, torn tendon in the foot, dyslexia and psychological impairment from acute anxiety, render him disabled.  Dkt. No. 9 at pp. 15-16.  In support of this claim, Plaintiff states he has already been rendered disabled by the State of New Jersey and since that determination, his conditions and pain have worsened.  Waimon also refers to both his and his wife's testimony describing his daily activities as limited by his physical and mental impairments.  He then cites to Dr. Sellig's opinion that Waimon's physical condition prevents him from any kind of manual labor or vigorous work.

Next, Waimon focuses on his mental impairments of dyslexia and anxiety which further limit his ability to perform even sedentary jobs that require him to read.  Dkt. No. 9 at pp. 15-16.  To support this contention, Waimon cites to Dr. Evans' report wherein he states that the Plaintiff cannot work in stressful situations due to his anxiety disorder.[7]

The Court views Waimon's last contention as challenging the ALJ's determination of his residual functional capacity (RFC).  Under Step Four of the disability analysis, the Commissioner

---

[7] For the reasons stated above, the Court will not address Plaintiff's claims regarding foot problems and opinions rendered by Dr. Fine.  *See supra* Part II.D.1.

assesses a claimant's RFC as a basis for determining the particular types of work the claimant may be able to do despite the existence of physical and/or mental impairments.[8]  *See* 20 C.F.R. § 404.1545(a); 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(c).  In qualifying work in the national economy, the Regulations classify and define jobs as sedentary, light, medium, heavy, and very heavy.  20 C.F.R. § 404.1567.  If the applicant can still perform the kind of work he or she performed in the past, they are deemed not disabled.  *Id*. at § 404.1520(e).  In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe.  *Id*. at § 404.1545(a).

If, after conducting the evaluation of RFC in Step Four, the ALJ determines that the applicant cannot perform his or her past work, then in Step Five, the ALJ must consider the applicant's age, education, and vocational skills, as well as his or her RFC to determine if the applicant can do any other work available in the national economy.  *Id*. at § 404.1520(f).  It is the Commissioner who possesses the burden of proof at Step Five in proving that there is work the claimant can perform.  *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999).  Ordinarily, if a claimant suffers solely from exertional impairments, the Commissioner meets this burden by resorting to the applicable medical vocational guidelines [the grids].  *Rosa v. Callahan*, 168 F.3d at 82; 20 C.F.R. §§ 404.1569 & 404.1569a.  "The grids take into account the claimant's physical limitations, age, education and work experience."  *Clark v.*

---

[8] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is what you can still do despite your limitations."  20 C.F.R. §§ 404.1545(a) and 416.945(a).

*Barnhart*, 2003 WL 221397777, at \*4-5 (E.D.N.Y. Sept. 16, 2003).  However, exclusive use of the grids is "inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations."  20 C.F.R. § 404.1569a(d).

We first address Plaintiff's contention that he met the criteria for disability from the State of New Jersey over fifteen years ago.  The Regulations clearly explains that a determination of disability by any nongovernmental or other governmental agency is based upon its own rules.  "Therefore, a determination made by another agency that [a claimant is] disabled . . . is not binding on [the Social Security Administration].  20 C.F.R. § 404.1504; *see also Dore v. Apfel*, 2003 WL 721381, at \*6 (S.D.N.Y. Mar. 3, 2003); *Hughes v. Apfel*, 992 F. Supp. 243, 249 (W.D.N.Y. 1997); *Vincent v. Shalala*, 830 F. Supp. 126, 131 (N.D.N.Y. 1993).

In determining Waimon's RFC, the ALJ gave great weight to the opinion of Waimon's treating chiropractor, Dr. Rehm.  It was Dr. Rehm who noted that Plaintiff could lift, carry, push, and pull up to fifty (50) pounds, had no limitations in standing or walking, and could sit for less than six (6) hours per day.  Tr. at 174.  This assessment is consistent with opinions of Drs. Weiss and Hameed, state agency physicians, who found Waimon retained the capacity to occasionally lift and/or carry up to fifty (50) pounds, frequently lift and/or carry up to twenty-five (25) pounds, sit, stand and/or walk six (6) hours in an eight (8) hour workday, and unlimited ability to push and/or pull.  Tr. at 199.  Drs. Weiss and Hameed specifically stated that the above assessment was warranted given the objective medical evidence in the file and was consistent with Dr. Rehm's assessment.  Tr. at 204.  They further stated that although Dr. Sellig reported Waimon was only capable of performing sedentary work, the above functional capacity is nevertheless consistent with the physical exam findings of Dr. Sellig.  *See* Tr. at 183-84 & 204.  Consistent with all of the above

analysis of Plaintiff's claims of error, we find that the ALJ committed no error in assessing Plaintiff's exertion level as medium.  Such determination is supported by substantial evidence, including the assessment of Plaintiff's own treating chiropractor.[9]

### III.  CONCLUSION

In light of the foregoing discussion, it is clear that in finding Waimon was not disabled, the ALJ applied the correct legal standards, though such was not contested, and his factual findings were supported by substantial evidence.  Thus, this Court recommends that decision be upheld.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Commissioner's decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

---

[9] As addressed above, it was not improper for the ALJ to give little weight to the determination of Dr. Evans since such evaluation did not appear to be based upon clinical or laboratory findings.  *See supra* Part II.D.1.

IT IS SO ORDERED

Dated:      March 9, 2006
                Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge